# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Emrikson v. Morfin*, 2012 IL App (1st) 111687

---

| | |
|---|---|
| Appellate Court Caption | PATRICIA R. EMRIKSON, Plaintiff-Appellant, v. FERNANDO MORFIN, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-11-1687 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | August 9, 2012<br><br>September 10, 2012<br>September 19, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court did not abuse its discretion in dismissing plaintiff's negligence complaint arising from a traffic accident for failing to exercise due diligence in serving defendant, especially in view of plaintiff's failure to consult the accident report, which contained defendant's correct address. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-001784; the Hon. James D. Egan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Joanna C. Fryer, of Chicago, for appellant.

Bruce Farrel Dorn & Associates, of Chicago (Ellen J. O'Rourke and Jean M. Bradley, of counsel), for appellee.

Panel

JUSTICE STERBA delivered the judgment of the court, with opinion.

Presiding Justice Lavin and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff-appellant Patricia Emrikson filed a complaint against defendant-appellee Fernando Morfin alleging negligence in connection with a traffic accident. Defendant moved to dismiss the complaint pursuant to Illinois Supreme Court Rule 103(b) (eff. July 1, 2007), arguing that plaintiff failed to use due diligence in effectuating service upon him. The trial court agreed and granted defendant's motion. On appeal, plaintiff contends that the court erred in granting defendant's motion to dismiss and in denying her motion to reconsider. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3     On February 16, 2007, plaintiff Patricia Emrikson was rear-ended by defendant Fernando Morfin while traveling on Lake Street in Melrose Park, Illinois. According to defendant, at the time, the Melrose Park police completed a traffic crash report (accident report) which detailed the accident. The accident report was completed at the scene and contained defendant's address–621 S. Ardmore Avenue, Addison, Illinois–telephone number, and driver's license number. Almost two years later, on February 13, 2009, three days prior to the running of the statute of limitations, plaintiff filed a complaint alleging negligence in connection with the accident.

¶ 4     Plaintiff used an Internet-based search tool, also known as a skip trace, to obtain defendant's address for service of process. A notice on the search page warns its users that the information may be defective and should be independently verified:

"The Public Records and commercially available data sources used in this system have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified."

According to plaintiff, she performed five skip traces on defendant between July 2008 and March 2010, which revealed the following addresses with corresponding dates: 407 Country Club Drive, September 2006 through January 2007; 555 W. Cullerton Street, Apartment 2, September 1999 through October 2006; 1553 N. Mannheim Road, June 2004 through August

-2-

2006; 621 S. Ardmore Avenue, March 2006 through July 2009; and 1506 N. Mannheim Road, July 2007 through March 2009. Three of the listed addresses, including Ardmore Avenue, also had corresponding phone numbers.

¶ 5        An initial summons was issued for defendant at 407 Country Club Drive on February 13, 2009. An affidavit of "due and diligent attempt" revealed that Don Haworth was assigned to execute the summons but was unsuccessful because defendant had moved two years prior. When a request for forwarding information from the United States Postal Service did not yield any results, plaintiff moved to appoint a special process server.

¶ 6        Plaintiff was granted leave to issue an alias summons on July 31, 2009, but service was not attempted. A second alias summons was issued on September 9, 2009. In an affidavit of service dated September 10, 2009, Haworth stated that he executed service of the second alias summons upon Teresa Morfin, defendant's sister, at 555 W. Cullerton Street. On October 26, 2009, after receiving the summons and complaint from his sister, defendant moved to quash service upon Teresa. Due to several continuances requested by plaintiff, the motion was not argued until March 11, 2010, after which the circuit court granted the motion without prejudice.

¶ 7        Subsequently, plaintiff performed another skip trace and filed a third alias summons with leave of the court. The special process server was directed to serve defendant at the Ardmore address but did not find defendant there. The process server then attempted and obtained service on defendant at 1506 N. Mannheim Road, defendant's place of business, on March 17, 2010. Thirteen months had elapsed since plaintiff filed the complaint. On April 8, 2010, defendant filed a motion to dismiss pursuant to Illinois Supreme Court Rule 103(b), arguing that plaintiff failed to use due diligence in effectuating service upon him.

¶ 8        At defendant's deposition taken in connection with defendant's motion, defendant testified that prior to the spring of 2006, he lived at the Cullerton address where his mother, father, and sister still reside. However, since the spring of 2006, defendant had lived alone at the Ardmore address. He operated a tire company located at 1506 N. Mannheim Road, where he worked daily from approximately 7:30 a.m. to 8 p.m. Since he had taken up residence at the Ardmore address, defendant had not listed 555 W. Cullerton as his residence on any credit card or any other application. Further, he immediately changed the address on his driver's license to 621 S. Ardmore Avenue after he moved and provided that address to police for purposes of completing the accident report.

¶ 9        After hearing argument on the motion, the trial court made a specific finding that the delay in service was not due to plaintiff's attempt to secure a tactical advantage, but it was troubled by plaintiff's failure to consult the accident report to determine the address, stating:

"[T]here is no explanation of why service was not attempted on the address that the defendant gave on a police report. It's a motor vehicle accident. I would think that would be the most logical place to look, is on the police report before going anywhere else."

Ultimately, the court concluded that this failure to rely on the accident report coupled with the lack of verification of the addresses provided in the skip trace was evidence of a lack of diligence and granted defendant's motion with prejudice.

¶ 10        Following the dismissal, plaintiff learned that Haworth had attempted service in July or

August 2009 at defendant's Ardmore address. According to plaintiff, Haworth also revealed that he placed defendant under surveillance from February 2009 to March 2010. Specifically, Haworth stated that he surveilled the Ardmore and Cullerton addresses, but was unable to locate defendant at either address. Plaintiff subsequently filed a motion to reconsider based primarily on the information revealed by Haworth. The trial court denied the motion and plaintiff timely filed this appeal.

¶ 11                                ANALYSIS

¶ 12    On appeal, plaintiff argues the trial court erred in finding that she failed to use reasonable diligence to obtain service on defendant. Initially, the parties dispute the standard of review for Rule 103(b) dismissals. Plaintiff urges us to apply a *de novo* standard, while defendant argues the more lenient abuse of discretion standard is applicable. We agree with defendant.

¶ 13    Our supreme court in *Segal v. Sacco*, 136 Ill. 2d 282, 286 (1990), held that dismissal under Rule 103(b) is within the sound discretion of the circuit court. Nevertheless, plaintiff, relying on *Lewis v. Dillon*, 352 Ill. App. 3d 512 (2004), argues that we should proceed under a *de novo* standard because the trial court in the instant case based its findings on conclusions of law. In *Lewis*, however, we declined to apply a *de novo* standard notwithstanding the fact that the trial court made certain legal conclusions. *Id.* at 515. We noted that because the trial court reviewed affidavits and weighed numerous factors in deciding whether the plaintiff exercised reasonable diligence, the lower court's ruling was subject to review for abuse of discretion. *Id.* at 515-16. Cases subsequent to *Lewis* have also applied an abuse of discretion standard to review Rule 103(b) dismissals. See, *e.g.*, *Case v. Galesburg Cottage Hospital*, 227 Ill. 2d 207, 213 (2007) ("[a] ruling on a motion to dismiss pursuant to Rule 103(b) will not be disturbed absent an abuse of discretion"); *McRoberts v. Bridgestone Americas Holding, Inc.*, 365 Ill. App. 3d 1039, 1042 (2006) (describing trial court's determination of a plaintiff's lack of diligence as a fact-intensive inquiry).

¶ 14    We decline to depart from this authority and hold that the appropriate standard of review is an abuse of discretion. A trial court abuses its discretion when its decision is "arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view." *Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill. App. 3d 504, 513 (2005).

¶ 15    We turn next to the merits of plaintiff's claim that the trial court abused its discretion in dismissing her complaint with prejudice. Rule 103(b) allows for the dismissal of a complaint based on a plaintiff's failure to exercise reasonable diligence in effectuating service upon a defendant. The rule provides the dismissal shall be with prejudice where the lack of diligence in service occurs after the expiration of the statute of limitations. Ill. S. Ct. R. 103(b) (eff. July 1, 2007).

¶ 16    A primary reason for the passage of Rule 103(b) was to prevent the intentional delay of service of summons upon a defendant for an indefinite amount of time in order to circumvent the applicable statute of limitations. *Karpiel v. LaSalle National Bank of Chicago*, 119 Ill. App. 2d 157, 160 (1970). In *Karpiel*, the court stated that "[t]he rule *** has an essential purpose in promoting the expeditious handling of suits by giving trial courts wide discretion to dismiss when service is not effected with reasonable diligence." *Id.* at 161. However, Rule

103(b) does not set forth a specific time in which a defendant must be served. *Cannon v. Dini*, 226 Ill. App. 3d 82, 86 (1992). Rather, it requires a plaintiff to exercise reasonable diligence in timely effectuating service upon the defendant. *Id.*

¶ 17 In moving for dismissal under Rule 103(b), the defendant must initially make a *prima facie* showing that the plaintiff failed to exercise reasonable diligence in effectuating service after filing the complaint. *Kole v. Brubaker*, 325 Ill. App. 3d 944, 949 (2001). Once the defendant establishes that the time between the filing of the complaint and the date of service suggests a lack of diligence, the burden then shifts to the plaintiff to provide a satisfactory explanation for the delay in service. *Id.* In the absence of a satisfactory explanation, the trial court is justified in granting a Rule 103(b) dismissal. *Id.* at 951.

¶ 18 In the case *sub judice*, plaintiff filed suit on February 13, 2009, and effectuated service upon defendant 13 months later on March 17, 2010. As a preliminary matter, plaintiff argues that the five-month period beginning when defendant moved to quash the service attempt on his sister, in October 2009, and ending when defendant's motion to quash was granted, in March 2010, should not be considered in determining due diligence. By that calculation, the time it took to effect service would be 7 rather than 13 months. However, in either case, the length of time raises an inference of a lack of reasonable diligence.

¶ 19 We have held that a time period of even five months between the filing of a complaint and subsequent service is sufficient to establish a *prima facie* showing of failure to diligently effect service. *Verploegh v. Gagliano*, 396 Ill. App. 3d 1041, 1045 (2009); see also *Long v. Elborno*, 376 Ill. App. 3d 970, 980 (2007) (seven months between filing and service supports a finding of lack of reasonable diligence). Therefore, we hold that regardless of whether 7 months or 13 months had elapsed before service occurred, the trial court did not abuse its discretion in finding that defendant successfully made a *prima facie* showing that plaintiff failed to timely execute service.

¶ 20 The burden then shifts to plaintiff to explain the reason for the delay and how her efforts demonstrated reasonable diligence. *Kole*, 325 Ill. App. 3d at 949-50. Importantly, dismissal under Rule 103(b) is based on the objective test of reasonable diligence; a plaintiff's subjective intent is immaterial. *Christian v. Lincoln Automotive Co.*, 403 Ill. App. 3d 1038, 1042 (2010). A trial court may consider several factors to determine whether a plaintiff has met its burden, including but not limited to: (1) the length of time used to obtain service of process; (2) the activities of plaintiff; (3) plaintiff's knowledge of defendant's location; (4) the ease with which defendant's whereabouts could have been ascertained; (5) actual knowledge on the part of the defendant of the pendency of the action as a result of ineffective service; (6) special circumstances which would affect plaintiff's efforts; and (7) actual service on defendant. *Segal*, 136 Ill. 2d at 287.

¶ 21 Turning first to the length of time, plaintiff devotes a substantial part of her argument to what she deems the trial court's erroneous consideration of the five-month period between the purported service upon defendant's sister and the granting of the motion to quash in determining the time it took to effect service. This argument fails in large part because, as plaintiff acknowledges, the court never explicitly stated the time period it was considering in ruling on defendant's Rule 103(b) motion. Moreover, to the extent that the court did

consider this five-month period in its calculations, it in no way implied that it found the time period between filing and service dispositive in reaching its conclusion.[1] To the contrary, the court correctly viewed the length of time it took to effect service in conjunction with other relevant factors (see *Christian*, 403 Ill. App. 3d at 1042), stating: "I believe that the length of time when having–with [defendant's address] being written in the police report on February of 2007 weighs heavily for the defense."

¶ 22    Plainly, what troubled the court was not the time that elapsed between service and filing, but plaintiff's activities during that time, when considered in light of the ease of locating defendant and plaintiff's own knowledge of defendant's location. Specifically, the court based its dismissal largely on the fact that plaintiff failed to consult the accident report of February 2007, which contained defendant's correct address. Plaintiff argues that a copy of the accident report was not in her possession and, therefore, the court erred in imputing the knowledge of its contents to her. However, while plaintiff may not have been in possession of the report, there is no suggestion that she did not know such a report existed, or that an address for defendant was listed therein. As such, it was reasonable for the court to weigh this fact against her. See *Semersky v. West*, 166 Ill. App. 3d 637, 643 (1988) (delay in service weighed against the plaintiff where the defendants' addresses were listed in a telephone directory and their location was "readily ascertainable").

¶ 23    To be sure, we have never held that a plaintiff's failure to consult a crash report in an automobile accident constitutes a lack of diligence *per se*, but we have taken this circumstance into account in affirming Rule 103(b) dismissals. For example, in *North Cicero Dodge, Inc. v. Victoria Feed Co.*, 151 Ill. App. 3d 860, 862 (1987), the defendant moved for dismissal pursuant to Rule 103(b) following a 20-month delay in service. The plaintiff had examined 10 different telephone directories in order to locate and ultimately serve defendant with an alias summons. *Id.* at 862. However, at all relevant times, the defendant was registered with the Secretary of State and the police accident report contained its correct mailing address. *Id.* Therefore, we affirmed the lower court's dismissal of plaintiff's complaint, reasoning that the plaintiff could have taken advantage of these more productive avenues to locate defendant. *Id.* at 863. Indeed, where the plaintiff has consulted an accident report, we have routinely reversed Rule 103(b) dismissals. See, *e.g.*, *Stash v. Doll*, 223 Ill. App. 3d 662, 664 (1992) (distinguishing *North Cicero* on the grounds that the plaintiff initially attempted to serve the defendant at the address on the accident report and consulted the Secretary of State to obtain the defendant's address); *Verploegh*, 396 Ill. App. 3d at 1045-

[1]A similar problem plagues plaintiff's contention that the court improperly took into account the fact that the complaint was filed three days before expiry of the statute of limitations. This also did not comprise the basis for the court's decision, as the court mentioned it only in passing, much as reviewing courts have done as a matter of course in considering appeals from Rule 103(b) dismissals. See, *e.g.*, *Womick v. Jackson County Nursing Home*, 137 Ill. 2d 371, 374 (1990) (noting that complaint was filed two days before expiration of statute of limitations); *Penrod v. Sears, Roebuck & Co.*, 150 Ill. App. 3d 125, 129 (1986) (mentioning that the plaintiff filed his complaint four days before expiration of statute of limitations); *Verploegh*, 396 Ill. App. 3d at 1042 (complaint was filed one week before the statute of limitations expired).

47 (noting that the plaintiff immediately consulted police report to ascertain the defendant's address and reversing dismissal).

¶ 24    Thus, in the instant case, plaintiff's failure to consult the accident report was an important factor to consider when determining her diligence, or lack thereof, in service. Plaintiff erroneously cites *Alsobrook v. Cote*, 133 Ill. App. 2d 261 (1971), for the contrary proposition. There, the plaintiff attempted to serve the defendant at the address on the accident report, but after this attempt failed, the only further efforts to locate defendant he made for a period of two years was an inspection of eight telephone directories. *Id.* at 264-65. We concluded that these efforts did not reflect reasonable diligence. *Id.* at 265. However, this conclusion was not based on the fact that the plaintiff consulted a two-year-old accident report to determine the defendant's address but, rather, on the fact that after an unsuccessful service attempt at that address, the plaintiff did not take appropriate further action to locate the defendant. *Id.* at 265-66.

¶ 25    Even assuming *arguendo* that plaintiff was unaware that an accident report existed and she was inappropriately charged with constructive knowledge of its contents, her activities still support a finding of lack of reasonable diligence in light of the ease with which defendant could be located. See *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 734 (2009) (we may affirm trial court's judgment on any basis in the record). Plaintiff aptly notes that skip trace searches, an inquiry to the post office, an immediate attempt at service upon filing the complaint, and the issuance of three alias summonses have generally been deemed to be indicative of reasonable diligence. See *Verploegh*, 396 Ill. App. 3d at 1045 (Internet searches and post office inquiries); *Brezinski v. Vohra*, 258 Ill. App. 3d 702, 704-05 (1994) (prompt attempt at service and issuance of alias summonses).

¶ 26    However, the unique circumstances of this case render it distinguishable from *Verploegh* and *Brezinski*. First, unlike the plaintiff in *Verploegh*, who followed up with a second service attempt a little over four months after her initial attempt was unsuccessful (*Verploegh*, 396 Ill. App. 3d at 1043), plaintiff here made a single service attempt on February 26, 2009, and did not make a subsequent attempt until seven months later, in September 2009. Additionally, with regard to the Internet skip traces employed in the instant case, the Web site warned users of the information's potential inaccuracy and urged independent verification of the results, but plaintiff nevertheless elected to rely on the information. More significantly, though the Web site contained corresponding phone numbers for three out of the five addresses it listed for defendant, there is no evidence plaintiff made calls to these numbers to determine which address was correct. Also relevant was plaintiff's decision not to attempt service on defendant at the Ardmore and 1506 Mannheim addresses, listed in the initial search results, when the dates corresponding to those addresses indicated they were more current. Instead, plaintiff attempted to serve defendant at the Country Club and Cullerton addresses, though the Web site reflected that defendant had not lived there since 2006. Under these circumstances, it was not arbitrary or unreasonable for the trial court to find that plaintiff's activities, the ease of accessing defendant's location, and plaintiff's knowledge of defendant's address all weighed heavily against plaintiff.

¶ 27    Finally, as to the remaining factors courts may consider in ruling on a Rule 103(b) motion, it is true both that actual service was had on defendant and that defendant had

knowledge of the pendency of the suit against him. However, the presence of these factors and any resulting lack of prejudice to defendant do not preclude a trial court from finding a lack of due diligence on the part of the plaintiff. *Womick*, 137 Ill. 2d at 377. Nor do we find that any "special circumstances" existed in this case, notwithstanding plaintiff's contention that because defendant was at work the majority of the day, any earlier attempts at service at the Ardmore address would have been unsuccessful. This argument is entirely speculative given that there was only evidence of one service attempt at that address. Accordingly, we cannot say that no reasonable person would have reached the conclusion arrived at by the trial court, and we hold that there was no abuse of discretion in dismissing plaintiff's complaint.

¶ 28    Plaintiff's second contention on appeal is that the trial court erred in denying her motion to reconsider the dismissal of her complaint. The grant or denial of a motion to reconsider lies within the discretion of the lower court. *American National Trust Co. v. Kentucky Fried Chicken of Southern California, Inc.*, 308 Ill. App. 3d 106, 120 (1999).

¶ 29    The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the hearing, changes in the law, or errors in the court's previous application of existing law. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 987 (1987). Here, plaintiff points to both newly discovered evidence as well as errors in the court's application of the law to support her motion. First, as newly discovered evidence, plaintiff submitted the affidavit of the special process server, who averred that he had defendant under surveillance and had been to the Ardmore address as early as July or August 2009 to attempt service.

¶ 30    Initially, we must determine whether this information in fact constitutes newly discovered evidence. "Newly discovered evidence" is evidence that was not available prior to the hearing. See *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248 (1991). In the absence of a reasonable explanation regarding why the evidence was not available at the time of the original hearing, the circuit court is under no obligation to consider it. *Landeros v. Equity Property & Development*, 321 Ill. App. 3d 57, 66 (2001). At the hearing on plaintiff's motion to reconsider, she failed to provide an explanation as to why she was unable to learn of the process server's attempt at service in July or August 2009, or of his surveillance, prior to the hearing on the motion to dismiss. Therefore, there was no reason for the circuit court to reconsider its decision on the basis of this evidence. See *Gardner*, 213 Ill. App. 3d at 248-49 (affidavit not considered "newly discovered evidence" because the plaintiff did not offer reasonable explanation of why it was not submitted prior to hearing).

¶ 31    Also in support of her motion to reconsider, plaintiff echoed her previous claims and maintained that the pendency of the motion to quash should not have been considered in assessing her due diligence and that her reliance on the Internet-based searches was reasonable. For the reasons discussed above, we hold that the trial court did not err in its original ruling with respect to these issues. As such, we conclude that the trial court's denial of plaintiff's motion to reconsider was not an abuse of discretion.

¶ 32                         CONCLUSION

¶ 33       For the reasons stated, we affirm the trial court's dismissal of plaintiff's complaint and denial of plaintiff's motion to reconsider.


¶ 34       Affirmed.